**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT A. STRENGER, *Plaintiff*, v. JEFFREY MINER, JENNIFER MINER, JENNIFER MALLEN, IOA NORTHEAST NY, INC d/b/a IOA NORTHEAST, INC., IOA GROUP, LLC, IOA INSURANCE SERVICES, LLC, IOA NATIONAL, INC., INSURANCE OFFICE OF AMERICA, INC., IOA AND FAMILY OF COMPANIES, JOHN DOE CORPS I-X, and JOHN DOES I-X, *Defendants*. | Civil No. 2:17-cv-03332 (KSH) (CLW) **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court on the appeal of Scott A. Strenger (D.E. 101) from the order of Magistrate Judge Cathy L. Waldor denying his motion to file an amended complaint (D.E. 100).

**I.   Background and Procedural History**

As alleged in the complaint, defendants IOA Northeast NY, Inc. d/b/a IOA Northeast, Inc., IOA Group, LLC, IOA Insurance Services, LLC, IOA National, Inc., Insurance Office of America, Inc., and IOA and Family of Companies (collectively, the "IOA Companies"), Jeffrey Miner, Jennifer Miner, and Jennifer Mallen (together

1

with the IOA Companies, the "defendants") engaged in adverse employment actions against plaintiff Scott A. Strenger, a former IOA Northeast NY employee. (D.E. 1, Compl. ¶ 1.) Strenger alleges that defendants breached his employment contract, refused and/or failed to pay all amounts due under the employment contract and commission policy, discriminated against him because of his disability in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*, and retaliated against him as a whistleblower in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19-1, *et seq.* (*Id.*) On June 29, 2017, defendants filed an answer and counterclaimed for breach of contract, tortious interference with prospective economic advantage, disgorgement of profits, and recoupment of excess draw. (D.E. 13.) After a Rule 16 conference, Judge Waldor entered an initial pretrial scheduling order on August 10, 2017. (D.E. 18.)

In October 2019, according to Strenger's reply brief in further support of the motion to amend, his counsel became aware of *Spagnuolo v. Insurance Office of America Inc.*, a state action in Florida filed against the IOA Companies in May 2019. (D.E. 89, at 17.) In December 2019, counsel for the Florida litigant "explained some of [the IOA Companies'] RICO enterprise and indicated that he would provide [Strenger's] counsel with both his research and his amended complaint." (D.E. 89-1, McCourt Decl. at ¶ 9.) Florida counsel then forwarded a draft complaint that contained "all of the 'allegations as to stolen accounts and overcharging customers.'" (*Id.* ¶ 11.) As a result, Strenger moved under Fed. R. Civ. P. 15 for leave to file an amended

complaint on February 21, 2020. (D.E. 86.) He sought to add as defendants John Ritenour, founder and chairman of the IOA Companies, and Heath Ritenour, chief executive officer of the IOA Companies, as well as four new causes of action: conversion; violation of New Jersey's Racketeer Influenced and Corrupt Organizations Act ("NJRICO"), N.J.S.A. § 2C:41-1 *et seq.*; conspiracy to commit a civil violation of NJRICO; and civil conspiracy. (*Id.*)

Judge Waldor ruled against Strenger, and he has appealed. (D.E. 100, 101.)

## II. Standard of Review

On appeal from a magistrate judge's ruling on non-dispositive matters, which include motions to amend the pleadings, *Patel v. Meridian Health Sys.*, 666 F. App'x 133, 136 (3d Cir. 2016) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998)), the district court must determine whether the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) (district judge may "modify or set aside any part of the order that is clearly erroneous or is contrary to law"); L. Civ. R. 72.1(a)(1), (c)(1)(A) (same). Findings of fact are reviewed for clear error and matters of law are reviewed *de novo*. *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017).

"A finding is clearly erroneous 'when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Merino v. C.I.R.*, 196 F.3d 147, 154 (3d Cir. 1999) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). As Judge

Walls in this District observed long ago, a ruling is "contrary to law" if the magistrate judge "has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998).

### III.  Discussion

Where leave to amend is sought beyond the scheduling order's deadline to do so, the movant must surmount both Rule 16(b)(4) and Rule 15(a)(2). *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 317, 319 (3d Cir. 2020). Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Whether good cause has been shown depends, in part, on the movant's diligence. *See id.* at 319 (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84-85 (3d Cir. 2010); *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)).

If good cause has been shown, Rule 15(a)(2) nonetheless requires, absent the opponent's consent, leave of the court to amend a pleading – which generally should be "freely give[n] . . . when justice so requires." Leave may be denied "where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Whether to grant leave to amend is a matter within the Court's discretion. *See, e.g., Race Tires*, 614 F.3d at 84-85.

In this case, Judge Waldor entered a pretrial scheduling order on August 10, 2017.  (D.E. 18.)  Among other deadlines, the order set January 1, 2018 as the deadline for motions to add parties or amend pleadings.  Strenger filed a motion for leave to file an amended complaint on February 21, 2020, more than two years later.  In denying the motion, Judge Waldor did not address whether good cause was shown under Rule 16(b)(4) because, "[r]egardless of whether Plaintiff's amendments are appropriate under Rule 16, they fail under Rule 15, because Plaintiff unduly delayed seeking these amendments."  (D.E. 100, at 3.)

"Delay alone is an insufficient ground to deny leave to amend."  *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted).  "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend."  *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Cureton*, 252 F.3d at 273).  "Thus while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner."  *Cureton*, 252 F.3d at 273 (citing *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984) *cert. denied*, 469 U.S. 1122 (1985)).

Judge Waldor held that because Strenger had knowledge of both John Ritenour and Heath Ritenour "from the inception of this litigation," he unduly delayed naming them as defendants.  (D.E. 100, at 3.)  In rejecting Strenger's argument that John

5

Ritenour's role only came to light during discovery, Judge Waldor noted Ritenour's alleged conduct is referenced in the initial complaint, and that Strenger noticed his deposition in March 2018.  Judge Waldor also noted that at all relevant times Heath Ritenour served as chief operating officer of the IOA Companies and found that the proposed first amended complaint did not contain "any newly discovered factual allegations that specifically pertain[ed] to [him]." (*Id.*)  Strenger argues that Judge Waldor's findings are based on an erroneous interpretation of the facts.

Strenger makes a valid objection to Judge Waldor's conclusion that he knew about the *Spagnuolo* litigation "much earlier" than February 2020 (D.E. 100, at 4) based on her reading of defendants' opposition brief.  In making that finding, Judge Waldor relied on defendants' argument: "That Plaintiff's proposed amendments so closely mirror the *Spagnuolo* case, commenced on May 9, 2019, and identified in Plaintiff's L. Civ. R. 11.2 Certification, raises further questions as to Plaintiff's motive in seeking amendment." (D.E. 87, at 27 n.9.)  In fact, there is no mention of *Spagnuolo* in Strenger's initial certification filed on May 10, 2017. (D.E. 1, at 31).  The Court, however, must "consider[] the entirety of the evidence" before it is "left with the definite and firm conviction that a mistake has been committed." *Wag Acquisition*, 2020 WL 5105194, at *2.

Reviewing the complaint, the Court does not agree with Strenger's assertion in his moving brief that he "had no reason to believe that it was anyone other than Jeffrey Miner who was taking Plaintiff's accounts and commissions . . . ." (D.E. 101-

6

1, at 30.) Strenger alleges in the complaint that the IOA Companies "all exercised significant control over Plaintiff's employment with IOA Northeast NY such that all are joint employers," and that "Plaintiff was required to travel to Florida to meet with John Ritenour . . . and his wife, Valerie Ritenour, the founder of [the IOA Companies], prior to the Offer of employment being made to Plaintiff so that [John] Ritenour could approve the Offer to Plaintiff." (D.E. 1, ¶ 18.) Again, the complaint states that "[p]rior to the offer being made, Plaintiff had to travel to Florida to meet with John Ritenour . . ., the founder of [the IOA Companies], and his wife, who had to approve the offer of employment." (*Id.* ¶ 28.) Based on the foregoing, Judge Waldor's finding that Strenger had knowledge of John Ritenour at the time he filed is not clearly erroneous.

The record also reflects that Strenger had knowledge of the alleged misconduct before proceeding to discovery in this matter. Strenger alleges that his Skyline Windows account had been taken over, and that his commissions for the referrals derived from that account had stopped. The complaint continues:

> 56. Surprised by the sudden cessation of referrals, Plaintiff's investigation revealed that he was no longer given credit for the referrals, was no longer being invited to the relevant meetings and was removed from the e-mail list(s) associated with the Skyline account and referrals associated with Skyline.
>
> 57. When Plaintiff inquired with Defendant Jeff Miner about this, Defendant Jeff Miner responded that the Defendant Companies' founder, John Ritenour flew up to meet with the head of Skyline's consulting firm; therefore, any referrals thereafter associated with Skyline were being

7

>  credited solely to Mr. Ritenour, including a lucrative account with Tulane University.

(*Id.* at ¶¶ 56-57.)

Nor do the proposed amendments contain newly discovered factual allegations that link the alleged claims of conversion, violations of NJRICO, and conspiracy to the defendants and the proposed Ritenour defendants. Judge Waldor properly characterized Strenger's statement regarding the "widespread stealing of producers' commissions and accounts, embezzling money, widespread failure to provide producers commission statements and/or providing producers with intentionally false commissions statements in an attempt to cover up the unlawful actions of the enterprise" as "conclusory and nonspecific." (D.E. 100, 3.) By way of example, the proposed amended complaint adds John and Heath Ritenour as parties, groups them together with Jeffrey Miner and the IOA Companies, and concludes they were all involved in the same wrongful conduct outlined in the original complaint. (D.E. 86-3, Ex. B, ¶¶ 7, 53-54, 63-79, 120-28, 132-33.)

Judge Waldor also took issue with the proposed new claims in their expansion of Strenger's legal theory of liability. A motion to amend a complaint to add a substantially different legal theory has been considered untimely and unduly prejudicial. *See, e.g.*, *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) ("The allowance of [plaintiffs'] untimely motion for leave to amend by adding this new and substantially broader claim would put an unwarranted burden on the trial court and be

8

likely to result in prejudice to [defendant].") "Prejudice may result from an amendment where a party has to change 'tactics or case theories' because of the new claims," or where the amendment would delay the matter's resolution or unnecessarily increase the cost of the litigation. *Stallings v. IBM Corp.*, 2009 WL 2905471, at *17 (D.N.J. Sept. 8, 2009) (Kugler, J.); *see also Cureton*, 252 F.3d at 273 (considerations include whether amendment would trigger "additional discovery, cost, and preparation to defend against new facts of theories").

In deciding whether the proposed amended pleading would unfairly prejudice the non-movant, courts consider whether permitting the amendment would "(1) require defendants to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay resolution of the dispute; or (3) prevent a party from bringing a timely action in another jurisdiction." *Formosa Plastics Corp., U.S.A. v. ACE Am. Ins. Co.*, 259 F.R.D. 95, 99 (D.N.J. 2009) (Salas, J.) (citing *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)).

Strenger argues that because discovery is ongoing, there is no prejudice to defendants, and that defendants had notice of the potential addition of parties and claims as a result of the *Spagnuolo* action. In opposing, defendants argue that if an amendment is allowed, they will be prejudiced because the discovery period would have to be extended, responses to new legal theories of liability would be required, and additional costs in preparing for trial would be incurred.

9

While Strenger points to Judge Falk's decision in *Marinac v. Mondelez International, Inc.*, 2019 WL 351900 (D.N.J. Jan. 29, 2019) for support, the reasoning there is inapposite. His holding that an amendment was permissible four years after the original complaint was filed was based on Judge Falk's observation that "any delay has little to no effect on the timing of resolution of this matter." *Marinac*, 2019 WL 351900, at *3. Here, Judge Waldor spoke to a very different concern, one uniquely in her discretion after years of handling discovery disputes and attorney conferences, and she voiced it best in refusing to "expand this litigation from an unpaid commissions dispute to a RICO and conspiracy action." (D.E. 100, at 3-4.)

Finally, Strenger argues in his moving brief that because certain events happened after the initial complaint was filed – specifically, the purchase of IOA Northeast NY by another company – Judge Waldor's order denying the motion to amend is contrary to Fed. R. Civ. P. 15(d). Strenger, however, did not raise this distinct argument before Judge Waldor and acknowledges in his reply brief that he, instead, "relied upon Rule 15, generally." (D.E 115, at 19.)

Rule 15(d) provides: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The standard under Rule 15(d) is 'essentially the same' as that under Rule 15(a)." *Ebert v Twp. of Hamilton*, 2020 WL 948774, at *2 (D.N.J. Feb. 27, 2020) (Thompson, J.) (quoting *Vernon v. Custer*, 2014 WL 1491211, at

*2 (M.D. Pa. Apr. 15, 2014)); *see also Planker v. Christie,* 2018 WL 4639197, at *3 (D.N.J. Sept. 27, 2018) (Arpert, J.) ("Such motions should be granted 'if it will promote the just disposition of the case, will not cause undue prejudice or delay and will not prejudice the rights of any parties.'") (quoting *Sky v. Haddonfield Friends Sch.*, 2016 WL 1260061, at *2 (D.N.J. Mar. 31, 2016)). "But, requests to supplement pleadings are left to the sound discretion of the court." *Planker*, 2018 WL 4639197, at *3 (citing *Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1133 (D.N.J. 1991)). "A Court also may deny a supplemental complaint 'when it would raise new issues and unduly delay resolution of the case." *Id.* (quoting *Love v. New Jersey Dep't of Corr.*, 2017 WL 4220576, at *4 (D.N.J. Sept. 22, 2017)).

The record before the Court provides no reason to conclude Judge Waldor's order denying Strenger's motion to amend as "untimely and unduly delayed," is contrary to Rule 15(d). (D.E. 100, at 4.) With respect to the sale of IOA Northeast NY, Strenger had knowledge of the purchasing entity, Hilb Group, LLC, and the purchase, as early as December 6, 2017, when he served a subpoena *duces tecum* on the Hilb Group. Strenger sought, among other things, all "documents" and "communications" that "relate, concern, reflect, or refer to The Hilb Group, LLC's purchase and/or acquisition of assets of IOA-NY." (D.E. 87-1, Ex. 1, at 9, 15.) The Court is satisfied that Judge Waldor's denial of Strenger's motion properly heeded the requirement in Rule 15(d) that any supplemental pleadings be "on just terms."

11

## IV. Conclusion

Judge Waldor did not commit clear error or act contrary to law in finding that under Fed. R. Civ. P. 15(a)(2), Strenger's proposed amendments are untimely and unduly delayed. Accordingly, the Court need not reach the alternative argument that amendment was unwarranted under Fed. R. Civ. P. 16. Strenger's appeal will be denied, and Judge Waldor's ruling is affirmed. An appropriate order will issue.

Date: March 31, 2021

    /s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.